We move to the fourth case this morning, Vega v. Chicago Park District. Good morning, Your Honor. May it please the court, my name is Marianne Holshall and I represent the defendant appellant, Chicago Park District. This is an action for discrimination on the basis of national origin brought under Title VII. The jury awarded Ms. Vega $300,000 in compensatory damages and the district court awarded plaintiff more than $180,000 for back pay as well as some other equitable relief. The issues of this present appeal are whether the district court erred in awarding Ms. Vega more than $1.2 million in attorney's fees and whether the district court erred in its calculation of the tax component to account for a lump sum award of back pay. That latter issue had been remanded following the previous appeal in this case. Both of these issues are reviewed for abuse of discretion. That is a deferential standard, but it's not bulletproof. District court abuses its discretion when there is no evidence upon which it could have based its decision, if the decision is based on an erroneous conclusion of law, if it's based on clearly erroneous factual determinations, or if the decision clearly appears arbitrary. With respect to the fees, Hensley v. Eckerhart made clear that the party seeking fees bears the burden both of establishing the reasonableness of the fees and documenting the hours billed in a manner that a reviewing court can determine what time was billed to which claims. The district court erred in not holding Ms. Vega to that burden. Instead, it explicitly stated that it was incumbent upon the defendant, the Park District, to try to ascertain what work various vague and inadequately described entries pertain to. Shifting the burden of the inadequate documentation to the Park District rather than the plaintiff amounted to the application of an incorrect legal standard and constituted an abuse of discretion. That kind of segues into the court's next error, was in misapplying the standard for awarding Ms. Vega fees for work on unsuccessful claims, of which there were many in this case. There were originally 10 claims brought. A number were disposed of on summary judgment. Of the four that went to trial, three were eliminated either by verdict or by the judgment notwithstanding the verdict. In applying that standard, the court concluded that the claims were all interrelated because they were, quote, all bound up together in the same essential course of events consisting of the investigation of plaintiff's timesheets and her ultimate termination. This standard, the same essential course of events, is error. This court has rejected that level of generality in determining whether the claims are related, stating that even sequential or causal relationships are insufficient. Instead, the claims must depend on the same facts. Here, Ms. Vega's national origin discrimination claim required proof of different facts than her gender discrimination, section 1983, and retaliation claims. The other forms of discrimination required different computer employees because she did rely on the indirect method of proof. The section 1983 claim required evidence of a policy or a policymaker. And her discrimination claim required that the Park District decision makers know of her complaint of discrimination, whether or not that, whether or not any discrimination actually occurred. In fact, in ruling on the supplemental fee position following the earlier appeal, the district court agreed that the section 1983 claim was insufficiently related to the Title VII claim. That said, the district court deducted only those entries for the appeal clearly identifiable as pertaining to the section 1983 claim, regardless of its recognition that, yes, the two were unrelated. There was certainly other time that pertained to the section 1983 claim, but was not described as such in the timekeeping records. As this court has recognized, when a court can't determine which time was spent on successful versus unsuccessful claims, there's, quote, nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims. It doesn't have, it's not a straight, she prevailed on only one claim, so we deduct 90%, but you do look at the ratio between successful and unsuccessful claims. Hensley likewise requires that the fee movement exclude hours that are excessive, redundant, or otherwise unnecessary. Here, the district court did acknowledge that the fee petition and billing records reflected a massive amount of work for a single plaintiff employment discrimination case, and noted that enormous amounts of time were spent on certain tasks. Those are outlined in our brief. Nevertheless, it awarded virtually everything that Ms. Baker requested. Ms. Holsall, can I get the benefit of your reaction to a factual question? It kind of goes back to a point you were making earlier, and maybe Mr. Wood can address it as well. Is there any aspect of the district court determination of the appropriate fee amount that reflects a reduction for time that would have been apportioned, whether through calculation or approximation, to the 1983 claim? With respect to the appeal, the district court did disallow time spent on, it was a cross appeal, so Ms. Vega had actually deducted the time for that brief, the final reply brief on a cross appeal. Other than that, Judge Alonzo did... As part of the supplemental calculation, supplemental fee calculation? Yes, the second fee petition following the appeal. But what about with respect to the pretrial efforts that would have went into preparing the 1983 claim for trial, and then trial on the 1983 claim? There were no identifiable entries, I believe, that were deducted. The judge did apply what it described as a modest 5% reduction overall on the claimed fees. Did Ms. Vega bill for those fees? Did she bill the park district for those fees? She did. Some were written off, others were not, certainly many of the pretrial hours. I guess what I'm asking is, I got the sense from the briefing that the plaintiff's lawyer, that she went through and took the first crack at reducing the fees based upon the unsuccessful claims, and then she submitted to the court what she believed were the fees on the successful claims, plus sort of the overlapping time, which at least touched on the factually related allegations. There were some that were voluntarily deducted before the fee petition went in, but certainly they were insufficient to reflect the lack of success on those claims. That deduction, I'm glad Judge Kirsch asked that. That deduction was in the ball, what, like $19,000 or $20,000? And that's because, I thought it was because, or my understanding was because the entries on the timesheets were vague, not that the entries on the timesheet reflected time spent on the 1983, you know, that was specifically identifiable as time dedicated to the 1983 claim. Most of the deductions made by the district court were based on vagueness or insufficient redactions. The district court deducted time for some of those, but not for all the ones that were similarly redacted. There were a few entries that the district court deducted that were clear enough that they could be segregated as attributable to unsuccessful claims. But by the way, speaking of that, in this case, I think the plaintiff provided unredacted copies of her bills to the district court. Is that right? She did. And the defendant said, was it the park's position that the court should not consider those? Correct, because they had not been provided to us. And so, it was considered an ex parte submission. And the district court said that it disregarded the unredacted bills in reaching its decision. But then you were left with the redacted bills. I mean, I guess I'm not questioning the strategy, but it seemed like she was saying these bills and there's things in the bills that are protected by the attorney-client privilege, which may have been. I'll provide them to the district. What could you have done with them? You know, I guess what could the parks have done with them that the district court couldn't in the sense that, you know, you'd be reading them. You're not going to be able to conduct cross-examination on what was meant by the entries. Can't get them because they're privileged. No, but we could, presumably, in the unredacted versions, it would be possible to determine, for example, what the research regarding redacted referred to, you know, if it was referring to section 1983 claim or gender discrimination. Well, those would be clearly excludable, but we were left with research re-redacted. I'd like to quickly touch on the tax component issue. That was remanded for the district court to show how it was calculated. In this respect, the district court erred in two aspects. It had insufficient evidence to do the calculation of Ms. Vega's hypothetical tax liability had she remained employed by the park district, again, due to excessive redactions on her tax returns that were produced. And secondly, by including the $300,000 compensatory damage award in calculating the effective tax rate. That appears to be a question of first impression in this circuit, as well as at the circuit court level. We have cited to some other district court cases, which do provide a thoughtful discussion of the distinctions between compensatory damages and income attributable wages. I'd just like to point out that if I ask you a question on that, I'm interested in that issue. Shouldn't a gross up calculation strive to take the plaintiff as it finds her? So do you know what I mean by that? Yeah, if there's $300,000 of compensatory damages, you have to deal with it. But that could lead to very anomalous and inconsistent results. Well, sure, sure, sure, sure. If you have a situation where, you know, somebody may have won the lottery or something in a year, but I get that. And so you can kind of carve out the extraordinary circumstance. But in a case like this, it just seems to me that it, as a matter of fact, is just a matter of a tax requirement. She's going to have to report the compensatory damages on her 1040. And they're going to have that on her tax rate. And so if the gross up is to make her whole, why does it really become inequitable to leave that in there in the computation of the effective tax rate? The gross up is to make her whole with respect to the lump sum award of back pay. She would have to bear the taxes or the tax consequences of the compensatory damages if there weren't back pay. So this is just making her whole rather than giving her a windfall. If the court doesn't have further questions, I'd like to reserve the remaining time for rebuttal. Thank you, Counsel. Mr. Wood. Good morning. May it please the court. Brian Wood on behalf of the plaintiff, Lydia Vega. As Ms. Holzall noted, this case comes to this court on its second appeal after this court affirmed the jury's verdict that the Park District violated Title VII by firing her because she was Hispanic. Now, as on the first appeal, the Park District is asking this court to overturn a fact finder's decisions, claiming no evidence supports them or that the decisions were clearly erroneous. But the district court correctly decided all of the issues presented for the appeal and correctly exercised the broad equitable powers that Congress bestowed upon it to fashion remedies under Title VII. It had presided over the liability trial and the equitable remedies trial and post-trial briefing and post-appeal briefing, including briefing on the initial and supplemental fee petitions. It knew the case, it knew the counsel, it knew the evidence, and it knew the law. And based on that, it correctly determined the tax component award necessary to make plaintiff whole, as Judge Scudder's questions seem to point out. And after a painstaking review of a substantial record, including many one-word objections, it correctly determined the attorney's fees that plaintiffs should receive as a prevailing party. Defendant's brief cherry-picks certain quotes from the district court's detailed and thorough opinions in the hopes that this court will ignore the district court's overall thoughtful reasoning. But as its opinions show, it considered every argument defendant made to it. It considered and weighed every piece of evidence that defendant put before it. And the district court applied this court's and Supreme Court precedents in making its determinations, including by denying plaintiff's attorney's fees that it considered unwarranted. Mr. Wood, can I offer an observation and get the benefit of your reaction to it? Absolutely, Judge. Okay. It's this. What I have on my mind here, what I'm worried about that you can address, is the combination of the use of the current hourly rates with the observation the district court made that, look, this all arises out of determination from the Park District. Okay. Vis-a-vis the lack of success on the 1983 claim. So what I'm wondering about is, and I think you're absolutely right and smart to start where you did, with abuse of discretion. And I think your characterization of it is correct, too. It's very broad. It's very deferential. But even within the ambit of that deference, can we say that this computation is okay when we really can't look at any aspect of it and point to a haircut for the lack of success on the 1983 claim? And the reason I ask that question is because the 1983 claim strikes me as quite serious. It's a claim that made its way to trial. She prevailed on it, indeed. It was only in appellate litigation, you know, that it was set aside. Or your cross-appeal was denied on that, right? Is the better case? Yes, Judge. It's those combinations of considerations that would help me for you to address. Sure. And I think it's important to distinguish when we're considering the section, the fees that may have been dedicated towards the 1983 claims. Distinguish between fees that were incurred in connection with the cross-appeal, which would have been evaluated on the supplemental fee petition, and fees that would have been evaluated prior to that. Sure, but the plaintiff seems to have had a really strong legal team, and the legal team surely would have put effort into preparing evidence on the 1983 claim. And that Venn diagram doesn't entirely overlap with the Title VII claim. We think, Your Honor, if you carefully parse the court's prior opinion, that it does. The defendants have identified, and this appears in the briefing on the Section 1927 sanctions motion that was filed, they've identified no witness that would not have had to testify under both theories. They've identified no exhibits that would have been forgone. And that's because under Title VII substantive law, a plaintiff can rely on evidence of treatment of others. And so in this situation, the same evidence that plaintiff would have presented to support her Title VII claim was the type of evidence that she presented in hoping to be able to prove to the jury, which she did, that there was an ongoing, pervasive, systemic pattern of discrimination against Hispanics at the Park District. All of that evidence is tied up together. And if Your Honor goes back and looks at the original decision affirming liability in this case, I think you'll find that the same evidence that plaintiff relied upon to support her Section 1983 claim is the evidence that she relied upon to help the jury infer that she was ultimately a victim of discrimination under Title VII because she was Hispanic. So I think that the District Court was correct in this instance in concluding that the unsuccessful, and this is to quote the District Court, the unsuccessful claims in her successful national origin discrimination claim were all bound up together in the same essential course of events consisting of the investigation of plaintiff's timesheets and her ultimate determination. And we believe that the case affirming a District Court's determination that such claims were related, Meriwether v. Family Dollar Stores, which we cite in our briefs, which in that case it was a discrimination and retaliation claim arising from the same course of events, helps establish that they are both compensable, even though technically distinct legal claims under Hensley. This Court's application of Hensley would require affirming the District Court because the District Court made the finding that the claims were related. We'd also note that, while your honors are correct, that the 5% across-the-board reduction for out-of-court time does appear in the District Court's decision under the heading vague entries. The District Court notes in its opinion, that's the appendix 16 and 17, that the reason for the opinion, I'm sorry, the reason for the across-the-board reduction is because it is having difficulty determining what is compensable or uncompensable based on a variety of different types of objections, including vague, excessive. And I believe that the defendant's descriptions of the objections that it was addressing included in its vague description that it couldn't tell whether or not it was for unrelated claims. So, ultimately, I think that the District Court's opinion should be affirmed because I think that the fairest interpretation of it is that the 5% across-the-board reduction accounts for a variety of different types of defendants' objections, not solely time entries that it thought might not sufficiently describe the activities. I think it's fair to interpret the District Court's decision to say that it is also an across-the-board reduction that accounts for any claims or time spent on claims that may have not been ones on which she ultimately prevailed. With respect to the 1983 claim on appeal, plaintiff's counsel did endeavor to eliminate all time associated with the cross-appeal. Initially, before providing its invoices, we did so again after meeting and conferring with defendant and the District Court eliminated any time that it thought was not compensable. So, for the time on appeal, I think that that issue is clarified well in the District Court's decisions. There's no compensable time for Section 1983 on the appeal. Judge Kirsch asked about the redacted invoices. We just want to clarify and note for the record that the District Court did say that it was in no way considering those redacted invoices and plaintiff explained in her briefing on that issue that there are very, very few redacted entries that were not eliminated from the bill voluntarily. We bring that up only because Judge Kirsch had the question about it. But in the end, we believe that the District Court fairly and correctly considered this Court's and the Supreme Court's presence in making its determinations and that, by definition, was not an abuse of discretion warranting reversal. I'm happy to answer any other specific questions that your honors have about the tax award or the attorney's fees awards, but otherwise, for the reasons set forth in our briefing, we'd ask this Court to affirm the tax component award that the District Court determined correctly and affirm the initial and supplemental attorney's fees awards that the District Court determined correctly and in her judgment in plaintiff's favor in those amounts and award costs on appeal. Mr. Wood, can I trouble you with one more question? Yes. Just to follow up on what you were talking about earlier. So, is what you were saying in response to my prior question that I'm looking at Title VII vis-à-vis 1983. That's what I'm trying to get at again. And I think what in substance you were saying, I want to be sure I understand it, is, look, she tried to show a widespread custom and practice of discrimination against Hispanic workers by drawing upon the exact same evidence, in particular, the evidence of comparator employees. And I think even more precisely, what was happening or not happening with respect to white park supervisors. Is that what you're saying, that the evidence didn't differ, it was the exact same? That is what we're saying, Judge. And it wasn't solely limited to comparator evidence. There were treatment of other Hispanic employees at the park district, including plaintiff's own supervisor. There's a litany of evidence that is described by the Court in the first opinion that plaintiff's also described in its briefing on liability that shows that the ultimate evidence that plaintiff was terminated because she was Hispanic and the ultimate evidence to support the 1983 claim was not different. Thank you. Thank you, Mr. Wood. Ms. Horson. I'd just like to point out a couple of things. First of all, as detailed in our brief, there were many redacted entries, redacted so significantly that you couldn't determine what they related to that were not deducted in the district court's final calculation. Secondly, with respect to the Section 1983 action, in the earlier appeal, this court found that there was insufficient proof of any sort of widespread practice of discrimination against Hispanics. So if there are no further questions, thank you. Hold on, hold on. That's right. That's right. But what I think you have to join issue with is what Mr. Wood is saying, that that's descriptively accurate of our prior appeal. But the plaintiff tried to rely upon the same body of evidence at trial to prove it turned out in the end that that verdict didn't stand. But it's not a distinct body, two separate bodies of evidence. And I think his point is that that's quite relevant when you're, when you're trying to, you know, argue that the total fees should be carved up more. That's, that's true that the widespread practice is, is an element of the Section 1983 action, but there are more significant element that it's a policy of the park district or the municipal entity, or that a policy maker knows about this practice and gives it, gives a blessing that was not proven, though they may be sequentially related or have certain things in common. I think legally they're not related for purposes of compensatory or compensating for attorneys. Thank you. Thanks to both. Council and the case is taken under advisement.